UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

EDWARD BROWN,

       Petitioner,

   - against -        **MEMORANDUN DECISION AND ORDER**

SUPERINTENDENT JAMES CONWAY of
Attica Correctional Facility,     CV-06-3555 (BMC)

       Respondent.

----------------------------------------------------------X

**COGAN**, District Judge.

  A jury convicted petitioner of First Degree Burglary, Third Degree Criminal Possession of a Weapon, Fifth Degree Criminal Possession of a Weapon, and Resisting Arrest. The conviction arose from petitioner's being caught red-handed after a home burglary. He was chased down by a neighbor who saw him fleeing the home, during which chase petitioner threatened the neighbor with a knife. Police officers joined the chase, and petitioner threatened to kill them with the knife as well. He was then arrested in possession of the property stolen from the home.

  Petitioner in this habeas corpus proceeding under 28 U.S.C. § 2254 (2006) seeks relief on the following grounds: (a) two errors concerning the presentation to the Grand Jury; (b) the trial court's improper application of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986), to the prosecutor's peremptory challenges; (c) the trial court's failure to conduct a charge conference before petitioner's counsel's summation; (d) the denial of

petitioner's request for a missing witness charge; (e) the delivery of a improper charge under Allen v. United States, 164 U.S. 492, 17 S.Ct. 154 (1896), and, as part of that, the failure to inquire into a juror's reservations during deliberations; and (f) the unconstitutionality under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), of petitioner's sentence under New York's persistent violent offender statute.

Each of these claims is discussed below in the order in which it occurred in the state court proceedings, with the relevant procedural facts set forth first in each point.

## I. Grand Jury Errors

Before voluntarily appearing in front of the grand jury, petitioner, with advice of counsel, executed a waiver of immunity form that stated, inter alia, that he "hereby waive[s] all immunities and privileges from self-incrimination that I might otherwise be entitled to receive as a result of testifying in said Grand Jury proceedings." When he took the stand, in response to questions, he confirmed his signature on the form and that he was waiving his rights.

In the Appellate Division, he argued that this waiver was invalid under New York Criminal Procedure Law §190.45 (2007) and that his conviction should be overturned and the indictment dismissed because the grand jury did not see him physically sign the form, as he alleged the statute requires. The District Attorney, in response, asserted that the statute was satisfied when a witness in fact signs the waiver and testifies that he has done so before the grand jury. The Appellate Division agreed with the District Attorney.

The second grand jury error alleged by petitioner stemmed from the fact that he had two grand juries. The indictment emanating from the first grand jury was dismissed

without prejudice for reasons not disclosed on the record. At the second grand jury, petitioner was cross-examined with his testimony from the first. He contends that this was unfairly prejudicial because there was no inconsistency between his second and first grand jury testimony.

Neither of these points presents an issue reviewable on federal habeas corpus. It is well-settled that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990). It is emphatically "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991).

As to petitioner's waiver of immunity point, it does not matter, for habeas purposes, whether petitioner's waiver complied with state statutory law. He had advice of counsel; he signed a waiver; and he ratified his signature in his testimony. There is no voluntariness issue that might give rise to a due process claim.

As to both the waiver of immunity and impeachment points, grand jury errors cannot support habeas relief. The petit jury's conviction effectively cleanses or displaces such errors because a federal habeas court will look to the evidence and procedures before the trial judge and jury to remedy any constitutional errors. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (since "federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state

grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court.").[1]

## II. Batson Challenge

At trial, petitioner objected to the prosecutor's use of peremptory challenges on the ground that the prosecutor was striking female venirepersons on the basis of their gender. The trial court found that petitioner had made out a prima facie case under Batson, and heard from the prosecutor and then petitioner as to the last three women that the prosecutor had struck, and made findings. However, the trial judge did not inquire into earlier strikes of female venirepersons.

In response to the petition in the instant case, respondent conceded that the trial judge had not gone far enough in the Batson hearing by failing to inquire concerning venirepersons other than the last three women struck. I agreed, and issued a conditional writ, offering the trial court the opportunity to conduct a reconstruction hearing, which it did. At the reconstruction hearing, the prosecutor was represented by counsel and was questioned as a witness by petitioner's counsel. The trial court heard closing argument from both sides, and made factual findings as to all of the venirepersons who the

---

[1] Petitioner argues in his reply brief a point not raised in the Appellate Division: that being cross-examined with his testimony from the first grand jury violated New York statutory requirements concerning grand jury secrecy. The point is procedurally barred and without merit.

The reply brief raises an additional point never heard before, namely, that what petitioner calls a due process or equal protection right has been violated because the prosecutor follows a practice of treating defendants who have privately retained attorneys differently than those represented by publicly appointed attorneys. Apparently, the argument is that if the defendant is represented by private counsel, he is only asked to sign the waiver of immunity after he is on the stand before the grand jury, whereas if he is represented by a legal aid attorney, he must sign before he takes the stand. The argument is based on limited, very anecdotal evidence that petitioner claims to have collected post-conviction. I am not going to consider a claim not raised in state court, but if I did, I would find it wholly without merit as a constitutional claim, both factually and legally.

prosecutor had challenged, in each case finding that the reasons offered were not based on gender and were not pretextual.

Petitioner bears a heavy burden in overcoming these factual findings. In a habeas corpus proceeding, the trial court's factual findings carry a presumption of correctness, which a petitioner can only overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). It is settled that Batson findings fall within this statutory presumption. Bryant v. Speckard, 131 F.3d 1076 (2d Cir. 1997).

Petitioner has not shown by clear and convincing evidence that the trial court's findings were wrong. The most that he can do is argue that the trial judge should have seen things differently. Without going through each prospective juror, a few examples will suffice to make the point that each challenge to the prosecutor's proffered reasons required the trial court to determine the prosecutor's credibility:

| JUROR[2] | PROSECUTOR'S REASON | DEFENDANT'S RESPONSE |
|---|---|---|
| Elizabeth | Too sympathetic because she was a journalism major, very involved in the Democratic Party, and press secretary to a city councilman[3] | None are genuine reasons |
| Jay | 1) Studying to get a degree in sociology<br><br>2) "Particularly young" because she was in her last year in college | 1) Education is not a valid reason<br><br>2) She was a Post Office supervisor, a homeowner, and a married mother of an eleven-year old and a two-year old. |

---

[2] I am using only the jurors' first names to avoid unnecessary disclosure of personal information.

[3] In his memorandum to this Court, petitioner additionally argues that this proffered reason was inconsistent with the decision not to strike another juror because that other juror was also involved in local politics and the prosecution did not question his party affiliation or strike him. This argument was not made to the trial judge at the reconstruction hearing, and it would be inappropriate for me to find clear and convincing evidence of pretext based on matters not called to the trial court's attention. Even if I were to consider this argument, however, it would not be sufficient to overcome the presumption of correctness.

| Shirley | Favorite show was "The Practice," so could believe that lawyers try "to trick people"[4] | 1) Neither party asked about the show beyond whether it was a favorite of hers<br><br>2) Ideal juror because a homeowner, retired public school teacher with a masters degree, elementary school volunteer, and mother of three professional daughters<br><br>3) Installed home alarm after neighbor was burglarized<br><br>4) Responses to hypothetical questions were clear<br><br>5) Assured the Court that watching "The Practice" would not affect her ability to be fair |
|---|---|---|

I have considered the challenges to each of the other female venirepersons and they size up similarly.

The most that petitioner has shown is fair grounds for argument, and that of course does not meet the standard for habeas corpus relief. This is particularly true because the Supreme Court has emphasized that "the best evidence" of whether a proffered reason is pretextual "often will be the demeanor of the attorney." Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 1040 (2003). Here, the trial judge had the opportunity to judge that credibility and allowed petitioner's counsel to engage in some questioning of the prosecutor. After further argument, the trial judge overruled petitioner's objection to each strike. I cannot say that petitioner has shown by clear and convincing evidence that the prosecutor's proffered reasons for exercising her

---

[4] In his memorandum to this Court, petitioner additionally argues that this proffered reason was inconsistent with the decision not to strike two other jurors (both women) who were both fans of "Matlock." As in n.3, supra, it would be improper for me to consider an argument not raised at the reconstruction hearing, but it would not change the result if I did.

peremptory challenges were pretextual. Accordingly, petitioner's argument that the trial court did not conduct a proper <u>Batson</u> hearing is insufficient to warrant habeas corpus relief.

### III. Improperly Timed Charge Conference

N.Y. C.P.L. § 330.10(4) requires a trial court to "specifically designate and submit ... those counts and offenses contained in the indictment which the jury are to consider. Such determination must be made, and the parties informed thereof, prior to the [charge] conference." That procedure was not followed at petitioner's trial; the trial judge delineated the charges after petitioner's summation but before the prosecution's summation.

However, like his challenge for the alleged violation of N.Y. C.P.L. § 190.45 (<u>see</u> Point I, <u>supra</u>), a violation of a technical requirement of state law is not reviewable in this Court unless it fundamentally undermined the fairness of a petitioner's trial. That is not the case here, as petitioner made no argument as to prejudice in the Appellate Division other than urging the Appellate Division to simply assume it.

He has tried to remedy that omission here by asserting that the order of summations, with the charging conference interjected between them, allowed the prosecution to "tailor its summation to fit the charges the Court submitted to the jury." Putting aside the fact that he never raised that argument in the Appellate Division, there is no support for it in the record. At the charge conference the trial court made only minor revisions of the charges correcting technical errors, such as renumbering the charges because one had been dropped before trial and correcting the names of two third-parties who the charges had misidentified. The subjects of these revisions were not featured at

all in petitioner's summation and could not have played a role in the prosecution's summation. There is no federal constitutional claim here.

## IV. Missing Witness Charge

Petitioner was confronted by more than one police officer during his attempted escape. The indictment identified Police Officer Erhardt as the arresting officer. Erhardt did not testify at trial. Instead, one of the other officers involved in the arrest, Police Officer Caminiti, testified as to what occurred, and specifically testified to facts that could support the jury's determination that petitioner resisted Erhardt's attempts to arrest him.

After the close of the evidence (which is too late under state law), petitioner requested a missing witness instruction on the ground that Erhardt would have provided evidence contradicting Caminiti. Petitioner offered no basis for his conclusion concerning Erhardt's testimony; he apparently expected that conclusion to be automatically inferred based on the fact that the prosecution did not call Erhardt. In the Appellate Division, petitioner argued that the prosecution had "changed its theory" of the case by calling Caminiti instead of Erhardt. The Appellate Division rejected the claim as unpreserved or without merit, without discussing it expressly, which is treated as a rejection on the merits for habeas corpus purposes. See Jimenez v. Walker, 458 F.3d 130 (2d Cir. 2006).

The propriety of a state trial court's jury instructions is ordinarily not a matter that raises a federal question, but rather, is a matter of state law. See Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 400 (1973). Only if a defective jury charge "so infected the entire trial that the resulting conviction violated due process" can a federal court grant

habeas relief. Id. at 147, 94 S.Ct. at 400. Thus, the failure to give a missing witness charge "will rarely support reversal or habeas relief since reviewing courts recognize the 'aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense' than any reviewing court." Malik v. Kelly, No. 97 Civ. 4543, 1999 WL 390604, at *7 (E.D.N.Y. April 6, 1999) (quoting U.S. v. Torres, 845 F.2d 1165, 1170-71 (2d Cir. 1988) (internal quotation marks omitted)). The decision of whether to give a missing witness charge is committed to the sound discretion of the trial court. Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992).

In the instant case, petitioner has failed to demonstrate that a missing witness charge was required under state law let alone required by the Due Process Clause. There was no "change of theory;" the indictment charged that petitioner had resisted Erhardt's attempt to arrest him and the evidence supported that. There was no reason to think that Erhardt's testimony would have been anything but cumulative. Even if Erhardt's testimony would have been inconsistent, the Appellate Division's rejection of the claim was not contrary to or an unreasonable application of any Supreme Court authority. 28 U.S.C. § 2254(d).

## V. Jury Deliberations

### A. *The Allen Charge*

After the jury had been deliberating approximately five hours, the foreperson sent a note to the trial judge stating that it was deadlocked. The note disclosed that there was a hesitant juror, and that she had doubts about the evidence and thought the case might be racially motivated. The trial court, after hearing from both petitioner and prosecution, gave a modified Allen charge. The charge was unremarkable and in conformance with

Page 9 of 14

both New York and federal standards, except that the trial judge added at the end, "I have to tell you that it's my intention to keep you for a substantial period of time." Petitioner contends that this was unduly coercive.

Early v. Packer, 537 U.S. 3, 123 S.Ct. 362 (2002), demonstrates the limitations of habeas corpus review concerning Allen charges. There, the Supreme Court reminded the lower federal courts that under 28 U.S.C. § 2254(d), they are not free to form their own conclusion as to whether a charge was unduly coercive. Id. at 10, 123 S.Ct. at 366. The Court noted that "even if we agreed with the Ninth Circuit majority . . . that there was jury coercion here, it is at least reasonable to conclude that there was not, which means that the state court's determination to that effect must stand." Id. at 11, 123 S.Ct. at 366.

The same conclusion is warranted here. The only part of the Allen charge about which petitioner complains is the trial court's indication that it intended to have the jury continue deliberations "for a substantial period of time." After a mere five hours of deliberation, it was, at the very least, reasonable for the Appellate Division to conclude that there was no jury coercion. The members of the jury, who of course generally have little or no experience as to their responsibilities, may not have understood that in some cases, deliberations can take days rather than hours, and that what appear to be deadlocks early in the process are often resolved through further deliberations. Advising the jury that deliberations may take "substantial time" did not push them towards a verdict adverse to petitioner; it was a neutral charge that simply advised the jury that deliberations had to continue much longer than the five hours they had put in.

I see no Supreme Court precedent as to which the Appellate Division's decision was contrary or which the Appellate Division unreasonably applied in rejecting this claim.

### B. Note from the Juror

Petitioner argues that the note signed by the hesitant juror ten minutes before the lunch break, expressing her qualms about the evidence, should have either been addressed by the Court before the lunch break or led to questioning of the juror under N.Y. C.P.L. § 310.30. Apparently, petitioner's theory is that the foreman of the jury deliberately withheld the note through the lunch break, using that time to change or to allow the other jurors' to change the differing juror's mind. During that period the hesitant juror did in fact change her mind. Both notes – the one from the hesitant juror and from the foreman announcing a verdict – were received immediately following the lunch break. The jury was polled and each juror, including the previously hesitant juror, individually confirmed their vote for conviction.

Like petitioner's other claims for alleged violations of New York statutory procedural law, this alleged violation does not give rise to a habeas corpus claim. There is no federal constitutional right that would require the trial Court to immediately respond to a juror note during a lunch break to cut off the possibility that the note might become moot by the time the lunch break has ended. Petitioner asserts that the Appellate Division's decision to the contrary was contrary to or an unreasonable application of Jones v. U.S., 527 U.S. 373, 119 S.Ct. 2090 (1999), but I do not see how that case even addresses this issue. This claim is therefore denied.

## VI. Apprendi Claim

In the Appellate Division and here, petitioner has attacked the constitutionality of the New York persistent violent felony offender statute, New York Penal Law § 70.08 (2007).[5] The statute provides for a career criminal sentencing enhancement if the trial court finds two prior violent felony convictions within the last ten years, which ten-year period is tolled during incarceration. Petitioner contends that since the statute requires findings by the trial court rather than a jury, it violates his Sixth Amendment rights under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000).

Defendant admitted to his prior convictions. That is sufficient for the trial court to have imposed the persistent violent felony offender enhancement. Rita v. United States, ___ U.S. ___, 127 S.Ct. 2456, 2466 (2007) (noting that a constitutional issue is not presented if defendant concedes the facts in issue). Even without the admissions, the fact of prior convictions has been excluded from those sentencing facts that a jury must determine since the Supreme Court decided Almendarez-Torres v. U.S., 523 U.S. 224, 118 S.Ct. 1219 (1998). Although that decision has been criticized, every subsequent Supreme Court sentencing decision, including Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63, has continued to exempt prior convictions from those facts which must be determined by a jury. See Cunningham v. California, ___ U.S. ___, 127 S.Ct. 856, 871 (2007); United States v. Booker, 543 U.S. 220, 244, 125 S.Ct. 738, 756 (2005); Blakely v. Washington, 542 U.S. 296, 301, 124 S.Ct. 2531, 2536 (2004).

---

[5] This issue needs to be distinguished from the constitutionality of N.Y. Penal Law § 70.10, which applies to *non-violent* persistent felony offenders. Section 70.10, unlike § 70.08, calls for the sentencing court to find a number of qualifying facts relating to petitioner's history and characteristics to impose an enhanced sentence. The requirement of finding these additional facts has caused courts in this Circuit to split as to the constitutionality of the statute. Compare Washington v. Poole, 507 F.Supp.2d 342 (S.D.N.Y. 2007) and Portalatin v. Graham, 478 F.Supp.2d 385 (E.D.N.Y. 2007) (holding statute unconstitutional) with Morris v. Artus, 06 Civ. 4095, 2007 WL 2200699 (S.D.N.Y. July 30, 2007) (upholding statute).

The Second Circuit has applied the prior conviction exception broadly. In U.S. v. Santiago, 268 F.3d 151 (2d Cir. 2001), the Court held that the question of whether prior convictions occurred on "separate occasions" for sentencing purposes could be determined by the court, not a jury, as part of its determination concerning the prior convictions themselves. The Court stated it this way:

> [W]e read Apprendi as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the "who, what, when, and where" of a prior conviction.

Id. at 156.

It could be argued that in light of intervening Supreme Court sentencing precedent since Santiago, the number of factual determinations that need not be determined by a jury has been reduced, and that the prior conviction exception to Apprendi should be eliminated. It is also the case that Santiago is not controlling in the instant matter as only Supreme Court authority supplies the standard for reviewing the Appellate Division's decision. See Rodriguez v. Miller, 499 F.3d 136, 142 (2d Cir. 2007) ("AEDPA itself tells us that the decisions of the courts of appeals cannot provide clearly established federal law.").

Nevertheless, as noted above, the Supreme Court continues to adhere to the prior conviction exception. Applying the deferential standard of 28 U.S.C. § 2254(d), I cannot say that the Appellate Division's rejection of petitioner's argument was either contrary to, or an unreasonable application of, Supreme Court authority. See Hayes v. Ercole, No. 06 Civ. 4073, 2007 WL 2403339, at *9 (S.D.N.Y. Aug. 20, 2007) (upholding constitutionality of § 70.08); O'Garro v. Ercole, No. 06 Civ. 3187, 2007 WL 401194, at

*4 (S.D.N.Y. Feb. 5, 2007) (holding that the "sentencing court's determination of the length of the petitioner's prior incarceration" under § 70.08 "for purposes of determining whether he was a persistent violent felony offender was not contrary to nor an unreasonable application of Supreme Court precedent").[6]

## CONCLUSION

The petition is denied. The Clerk is directed to enter judgment in favor of Respondent. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253(b)(2).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
U.S.D.J.

Dated: Brooklyn, New York
November 19, 2007

---

[6] Since I find petitioner's Apprendi claim without merit, I need not address respondent's contention that it is procedurally barred, although I note that petitioner did not challenge the constitutionality of his conviction under the statute before the trial court, and the Appellate Division expressly disposed of the claim both as procedurally barred and without merit.